[No. 565. Decided April 29, 1893.]

L. SAMUEL, *Appellant*, v. CHARLES H. KITTENGER *et al.*, *Respondents*.

FRAUDULENT CONVEYANCES — DEED INTENDED AS MORTGAGE — TRUST DEED — PREFERENCES — EVIDENCE.

A conveyance of land intended as a mortgage to secure an existing debt is not void as to creditors, in the absence of any showing that the value of the land is greatly in excess of the indebtedness which it is intended to secure.

A conveyance of property in trust for those to whom it equitably belongs can in no event be void as to creditors.

The fact that, within a few days after the conveyance of certain land for a given consideration, another conveyance is made of the same land, with additional land, to the same grantee and for the same consideration as expressed in the former deed, is not evidence of fraud.

A debtor, although in failing circumstances, may pay or secure any one or more of his creditors, to the exclusion of others.

*Appeal from Superior Court, King County.*

*Allen & Powell*, for appellant.

*Preston, Carr & Preston*, and *W. R. Bell* (*E. F. Blaine*, of counsel), for respondents.

The opinion of the court was delivered by

ANDERS, J.—On March 16, 1891, the appellant obtained a judgment against the respondent, Charles H. Kittenger, in the superior court of King county, for the sum of $2,-233.87, and costs. Executions were issued, and returned by the sheriff unsatisfied; and thereupon the appellant brought this action against the respondents, alleging in his complaint the rendition of his judgment and the issuing and return of execution thereon, as above stated, and that after the said Charles H. Kittenger contracted the debt upon which the said judgment was rendered, and after the maturity thereof, he, on the 20th day of June, 1890, pretended to transfer and convey by deed to the respondent Van Tuyl, a large number of town lots and blocks, in Irondale Addition to the town of Kirkland, in King county and State of Washington, and described in the complaint; that afterwards, on January 8, 1891, the said Charles H. Kittenger pretended to transfer and convey by deed to the said Van Tuyl certain other described town lots situated in Jackson and Rainier Street Addition to the city of Seattle, in said county of King; that on or about September 16, 1889, the said Kittenger pretended to transfer and convey by deed to the respondents George B. Kittenger and Mary C. Kittenger, his wife, certain described real estate situated in said county and state; that the said Kittenger, on the 8th day of January, 1891, pretended to transfer and convey by deed certain real estate described in the complaint, and situated in King county, to the respondent C. S. Preston; that the said pretended transfers were made without consideration, and in pursuance of a conspiracy between the said Charles H. Kittenger and the said several grantees, with intent to hinder, delay and defraud the plaintiff and other creditors of said Kittenger, and in secret trust for the use of said Kittenger; that the said Charles H. Kittenger

had not at the time of said conveyances, nor at the time of
either of them, sufficient property remaining subject to ex-
ecution to pay all of his just debts, and that by said con-
veyances he rendered himself wholly insolvent, and has not
now, nor has at any time since said conveyances, had suffi-
cient property subject to execution out of which said judg-
ment could be made, and that the said transfers, and each
and every thereof, were made with full knowledge on the
part of said grantees of the insolvency of the said Kitten-
ger, and with the intent to hinder, delay and defraud the
plaintiff; that said Kittenger has equitable interests, things
in action, and other property which cannot be reached by
execution, and the exact character and form of which is un-
known to the plaintiff and the knowledge of which is wholly
within the conscience of said Kittenger, and that he also
has debts due him from persons unknown to the plaintiff;
that said Kittenger has not any property, other than that
embraced in said conveyances, and the equitable interests.
things in action, and other property which cannot be
reached by execution, and the debts due him as aforesaid,
out of which the said judgment could be satisfied in whole
or in part.

And the prayer of the complaint is, that said transfers
be declared fraudulent and void as against the plaintiff, and
that the lands described in the several deeds of conveyance
be decreed to be subject to the lien of the plaintiff's judg-
ment, and that the said Charles H. Kittenger be adjudged
to pay the plaintiff's judgment out of said equitable inter-
ests, things in action and other property which cannot be
reached by execution, and debts due him, and all property
held in trust for him, or in which he is in any way or man-
ner beneficially interested, and that the said Kittenger be
enjoined from transferring the property pending the suit,
and that a receiver of all the property which cannot be
reached upon execution be appointed, with authority and

instructions to sell the same and apply the proceeds thereof to the payment of plaintiff's judgment.

The respondents filed separate answers, admitting that the property described in the complaint was conveyed to the respective parties therein mentioned, at the times specified, but denying all other allegations of the complaint, except that the appellant commenced an action in the superior court and obtained a judgment therein against Charles H. Kittenger and the return of execution thereon unsatisfied, as alleged in the complaint.

Upon the issues thus framed the cause proceeded to trial. And after the plaintiff had introduced his testimony, and rested his case, the defendants moved the court to dismiss the action on the ground that the evidence was insufficient to sustain the allegations of the complaint. The motion was granted by the court, and judgment rendered in favor of the defendants for costs, from which the plaintiff appealed to this court.

The appellant insists that the ruling of the court is erroneous, and whether or not his contention is tenable, can only be determined by a review of the evidence in the record. The burden of proving the fraudulent intent alleged was upon the appellant. And, as he was opposed at the outset by the presumption of honesty and legality that prevails in favor of the ordinary business transactions among men, it was incumbent upon him to prove, by clear and satisfactory evidence, that the conveyances which he assailed were in reality fraudulent and void as to him. Bump, Fraud. Conv. (3d ed.), 600, 604, 605, and cases cited. *Wagner v. Law*, 3 Wash. 500 (28 Pac. Rep. 1109). And if he has not done so, the action was rightfully dismissed. It will be observed by an examination of the complaint that the action is divisible into as many distinct branches as there are respondents and transfers. And we will, therefore, first examine the evidence adduced by the appellant

which is specially applicable to each of the transfers, as if
that particular branch of the case stood alone, and after-
wards consider that which is pertinent to the case as a
whole.

As to the transfer of the lots in Irondale Addition to
Kirkland to Van Tuyl, the facts as disclosed by the testi-
mony of appellant's witness are briefly as follows: Some
time before the execution of the deed to Van Tuyl, the re-
spondent Charles H. Kittenger, together with three other
individuals, purchased an eighty acre tract of land near Kirk-
land, and subdivided it into lots and blocks, and platted it
as a town plat. They borrowed the money used in the pur-
chase from the banking house of Dexter Horton & Co.,
and gave the bank, or one of its officers for it, their note
and a mortgage on the property to secure the payment
thereof. The title from their vendor was taken in the
name of C. H. Kittenger by agreement between the parties
interested. On June 20, 1890, in order to remove the
mortgage and thereby facilitate the transfer of lots, and at
the same time not deprive the bank of its security, the
property, except some portions thereof which had been
conveyed to other parties, was conveyed by Kittenger to
the respondent Van Tuyl, who was the cashier of the bank,
by deed in which the consideration stated was one dollar.
No money whatever was paid by Van Tuyl to Kittenger
for the conveyance, but it was agreed between the parties
interested in the property that the transfer should be made,
and that Van Tuyl should hold the land, as a trustee, to se-
cure the bank for the sum loaned to the said purchasers,
which then amounted to something over eight thousand
dollars; and also in trust for the four owners whose inter-
ests were equal and undivided. A declaration of trust
was duly executed and delivered evidencing this agreement,
but it was never recorded.

It further appears that about this time the respondent

C. H. Kittenger was indebted to the bank in the sum of about $14,000 besides his liability on the joint note above mentioned; and it was agreed between the bank, Kittenger and Van Tuyl that the latter should hold Kittenger's interest in the property as security for the payment of this additional indebtedness to the bank. This latter agreement was evidenced by a written instrument — an assignment, so-called — of Kittenger's interest to the bank, but which was not introduced in evidence, although the paper seems to have been before the court at the trial and marked for identification. After the delivery of the deed to Van Tuyl the purchase money mortgage was canceled. What the value of the Irondale lands was at the time of the conveyance to Van Tuyl, cannot be definitely ascertained from the evidence. The witnesses fix the price of lots some time after the transfer at from fifty to one hundred and fifty dollars each, according to size, and the value of the land per acre at from $250 to $500, but state that these values were speculative, merely, depending upon the prosecution of some manufacturing enterprise that had been projected in that vicinity. No actual sales were shown, and, in fact, one of the witnesses testified, in effect, that he did not think that cash sales could have been made at the time. Neither the number of the lots in each block, nor the size of the lots, nor the number of acres of land embraced in the deed, are shown, and there is therefore no substantial basis upon which the value of the property can be intelligently estimated. When the deed in question was given to Van Tuyl he had no knowledge of the existence of the appellant's claim against Kittenger, and no notice of any intent on his part to defraud the appellant or any other person.

The above is the substance of all the evidence pertinent to the conveyance under consideration, and we think it fails to show any actual fraud either on the part of Charles

H. Kittenger or Van Tuyl.  The fact that Van Tuyl sold
a right-of-way through the lands transferred to him to a
railroad company and applied the proceeds in part pay-
ment of the joint note held by the bank, is only material
in so far as it tends to show that he was endeavoring to
comply with the provisions of the declaration of trust.

In respect to the transfer of the Jackson and Rainier
street property by Kittenger to Van Tuyl, the appellant
proved, by the deed which he introduced in evidence, that
on January 8, 1891, Kittenger conveyed the property to
Van Tuyl for an expressed consideration of $5,000, and
that the deed was recorded on the following day at the re-
quest of Kittenger, and he further proved by Van Tuyl
that he paid nothing for the deed and knew nothing con-
cerning it until a short time afterwards when Kittenger in-
formed him of its execution, and stated, in effect, that the
property had belonged to his two brothers and himself, and
that he, Kittenger, had received his share from sales made,
and that his brothers were the equitable owners of the
property.   Van Tuyl thereupon agreed to hold the prop-
erty for the owners thereof.   No evidence was introduced
in reference to this deed, tending to show that the property
was to be held for the benefit or use of the grantor, or that
Van Tuyl had any knowledge whatever that the transfer
was designed to place the property beyond the reach of Kit-
tenger's creditors.   And, while the transaction was an un-
usual one, still we are not prepared to say, under the state
of facts disclosed, that the conveyance ought to be declared
illegal.   Only those transfers which are inhibited by law
are void.   And a conveyance of property in trust for those
to whom it equitably belongs can in no event be void as to
creditors for the reason that their equities cannot be para-
mount to those of the *cestuis que trust.*

The only proof offered concerning the transfers to George
B. Kittenger and wife was the deeds which show that, on

September 16, 1889, C. H. Kittenger and wife made their deed of the property therein described, to George B. Kittenger and wife, for the expressed consideration of eight thousand dollars, which deed was recorded on October 5, 1889, at the request of the grantee, and that on September 28, 1889, the said C. H. Kittenger and wife made their deed of the same property, together with other lands, to George B. Kittenger, in which the consideration of eight thousand dollars was expressed, and which deed was also recorded on October 5, 1889, at the request of the grantee. Certainly these conveyances could not well have been declared fraudulent and invalid by the learned judge who tried this cause, upon this evidence alone.

The deed of C. H. Kittenger and wife to C. S. Preston, purporting to convey to him the lots in Irondale Addition to Kirkland was, as the evidence discloses, in fact, made in trust to secure an existing indebtedness of Kittenger to E. M. Carr and Harold Preston, for cash advanced and legal services theretofore rendered. The amount of this indebtedness at the time of the transfer, as shown by the books of Carr and Preston, was between three and four hundred dollars, but the exact sum was not stated. Nor can the real cash or market value of Kittenger's interest at the time be deduced from the testimony, although the speculative and contingent value of one-fourth of the property was far in excess of the debt secured. The evidence negatives the idea that Preston took the conveyance with a secret trust to hold the surplus for the use of Kittenger, or with any intention or design of preventing the creditors of Kittenger from reaching such surplus. He paid nothing for the conveyance, and simply held the property for the benefit of these creditors whom Kittenger desired to prefer over others. Our statute denounces as fraudulent and void such conveyances only as are made in trust for the use of the grantor. Gen. Stat., § 1452. And where

there is no such trust agreed upon or understood between
the parties, but the object of a transfer of property is to
pay or secure the payment of a debt, the transaction is
valid, although the effect may be to preclude the creditors
from subjecting the property to the payment of their
claims against the common debtor.   A debtor, although
in failing circumstances, has a right, if he sees fit, to pay
or secure any one or more of his creditors, to the exclusion
of others.   *Turner v. Iowa National Bank*, 2 Wash. 192
(26 Pac. Rep. 256).

The method adopted by Kittenger to secure this debt is
open to suspicion, and is not to be commended, but upon
the proof made we do not feel warranted in declaring the
transaction void.

In addition to the foregoing testimony relating specially
to the several transfers which the appellant alleges are
fraudulent and void, the appellant proved that Charles H.
Kittenger, subsequently to the time when he became in-
debted to the appellant, made other transfers of property,
both personal and real, to trustees in some instances, and
that several actions were commenced against him and prose-
cuted to judgment in the superior court.   And upon the
whole evidence in the record the learned counsel for the
appellant insist with much earnestness that the judgment
ought to be reversed.

In order that a deed may be declared fraudulent and void
as to creditors it is indispensably necessary, as before inti-
mated, to satisfy the court that it was made with a fraud-
ulent intent on the part of the grantor; and the question
of intent is generally one of fact and not of law.   Where,
however, the intent of the parties may be gathered from
the face of the instrument itself, and the natural and in-
evitable consequences of its provisions is to hinder, delay
or defraud creditors, or where an insolvent makes a volun-
tary conveyance of the property, the instrument is void as

a conclusion of law.   Bump, Fraud. Conv. (3d ed.), 22, 23; see, also, *Williams v. Evans*, 6 Neb. 216.

The conveyances sought to be set aside as fraudulent in this case are not void upon their face, nor have either of them been shown to be voluntary merely, and hence the question to be determined is one of fact to be established by the proofs.   It is specially urged, however, on behalf of the appellant, that a deed absolute in form but intended to operate as a mortgage is fraudulent and void as to the grantor's other creditors.   Upon this proposition the decisions of the courts are not uniform, but we think the weight of authority is in favor of the doctrine that such conveyances, where given in good faith and to secure an actual indebtedness, are not constructively fraudulent. *Ross v. Duggan*, 5 Col. 85; *McClure v. Smith*, 14 Col. 297 (23 Pac. Rep. 786); *Muchmore v. Budd*, 53 N. J. Law, 369 (22 Atl. Rep. 521); Bump, Fraud. Conv. (3d ed.), 41, and cases cited; Wait, Fraud. Conv., § 238; *Warren v. His Creditors*, 3 Wash. 48 (28 Pac. Rep. 257).

A careful consideration of the whole evidence in the case fails to satisfy our minds that the decision of the court below was wrong, and the judgment is, therefore, affirmed.

DUNBAR, C. J., and SCOTT and STILES, JJ., concur.

HOYT, J., not sitting.