[No. 8573. Department One. January 20, 1910.]

AMELIA C. MORSE, *Respondent*, v. THOMAS N. MORRIS *et al.*, *Appellants.*[1]

HOMESTEADS — EXEMPTION — DETACHED TRACTS — STATUTES—CON-STRUCTION. Under Rem. & Bal. Code, § 528, defining a homestead as the dwelling house in which the claimant resides and the land on which the same is situated, to be selected as in the act provided, and Rem. & Bal. Code, § 552, providing that lands and tenements, not exceeding in value two thousand dollars, actually intended and used exclusively for a home may be selected, a homestead may consist of lots in one block upon which the dwelling is situated, and lots in an adjoining block, separated from the dwelling and by an alley, used as a garden, orchard, and chicken run.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered August 12, 1909, in favor of the plaintiff, in an action for an injunction, after a trial before the court without a jury. Affirmed.

*H. W. Lueders*, for appellants.

*James J. Anderson*, for respondent.

CHADWICK, J.—Plaintiffs brought this action to restrain the sale of property claimed as a homestead.

Amelia C. Morse and Charles H. Morse, husband and wife, were the owners of lots 20, 21, 22, and 23 in block 7, and lots

[1]Reported in 106 Pac. 468.

o'f the same description in block 8, of Mayhew's addition to the village of Fern Hill, a suburb of Tacoma, Washington. Prior to June 22, 1909, defendant John S. Strickland had obtained judgment against them, and upon that date sued out an execution, which was levied upon the lots in block 7. Plaintiffs' dwelling, woodsheds, and outbuildings were built on the lots in block 8. The lots in block 7 were used as a garden, orchard, chicken run, etc. The two blocks were separated by an alley. The whole property was found to be of the value of $1,600. From a decree in favor of plaintiffs, defendants have appealed. Pending the appeal, Charles H. Morse died, and the appeal is prosecuted by his widow, in her own behalf and as executrix of his last will and testament.

It is contended that the court erred in holding that lots 20 to 23 in block 7 were exempt, for the reason that the property was urban property and divided by an alley. The statutes governing homesteads and their selection, in so far as they apply to our present inquiry, are as follows:

"The homestead consists of the dwelling house, in which the claimant resides, and the land on which the same is situated, selected as in this chapter provided." Rem. & Bal. Code, § 528.

"Homesteads may be selected and claimed in lands and tenements with the improvements thereon, not exceeding in value the sum of two thousand dollars. The premises thus included in the homestead must be actually intended and used for a home for the claimants, and shall not be devoted exclusively to any other purposes." Rem. & Bal. Code, § 552.

Appellants well say that, "whether a tract of land detached from the tract on which the dwelling house is situated may be recorded as a part of the homestead if used by the owner of the home place in connection therewith, is a question about which the courts are not agreed." But the conflict of authority is more apparent than real, for all such decisions are grounded upon the statutes, and material differences exist in the legislative expression of the right of homestead; as, for instance, counsel relies upon certain Minnesota cases, but the

statutes of Minnesota make specific provision for the area to be allowed in cities, villages, and towns. It may be added, in passing, that a more recent decision of the supreme court of the state of Minnesota, *Brixius v. Reimringer*, 101 Minn. 347, 112 N. W. 273, 118 Am. St. 629, has relieved the burden of some of the earlier decisions in that state, and allowed a homestead in rural property where the property was divided by an open roadway.

We must look to the spirit and intent, as well as the words, of the statute. Homesteads are generally allowed either as a certain area, or as of a certain limited value. With the first, we have no concern; for not only does our statute ignore that theory, but expressly provides that the home shall be exempt to the value of $2,000. The underlying principle is the use to which the property is put, and if it is actually put to a use consistent with the ordinary domestic affairs of the household, and taken together does not exceed in value $2,000, there can be no justification in law or reason for denying to it that character which the legislature intended, albeit it may be divided by a street, alley, or a public road. To hold otherwise would read into the law something that is not there, and thus defeat its purpose. Under a statute, in spirit if not quite in form, the same as our own, it was held, in *Gregg v. Bostwick*, 33 Cal. 220, 91 Am. Dec. 637, with great emphasis, as it seems to us, that:

"The statute does not provide that 'a quantity of land, not exceeding in value five thousand dollars, including within its boundaries the dwelling house and its appurtenances, shall be exempt from forced sale.' On the contrary, the language is, that 'the homestead, consisting of a quantity of land, together with the dwelling house thereon and its appurtenances, not exceeding in value the sum of five thousand dollars, shall be exempt,' etc. The difference between the two forms of expression is too obvious for explanation. The former makes the exemption of five thousand dollars worth of land the primary object, and the homestead merely a necessary incident. The latter makes the homestead the primary and the sole object of the exemption, with a limitation as to value. . . .

It represents the dwelling house, at which the family resides, with the usual and customary appurtenances, including out-buildings of every kind necessary or convenient for family use and lands used for the purposes thereof. If situated in the country it may include a garden or farm. If situated in a city or town, it may include one or more lots, or one or more blocks. In either case it is unlimited by extent merely. It need not be in a compact body; on the contrary, it may be intersected by highways, streets or alleys. Neither is it cir-cumscribed by fences merely. In respect to quantity by itself considered it is unlimited, whether in town or country. In short, the only tests are use and value. The former is both abstract and statutory—the latter statutory only."

In *Buxton v. Dearborn*, 46 N. H. 43, it was held that a small tract a mile distant from the dwelling house, upon which the claimant cut hay for his cow, might be included in the homestead if the two tracts did not exceed the statutory limit of value. The reasoning of the court was that, if the land was actually used and was necessary to the convenient enjoy-ment of the home, it would defeat the humane object of the statute to deny the land its proper character because it did not happen to join the lots upon which the dwelling house stood. In *Anderson v. Sessions*, 93 Tex. 279, 51 S. W. 874, 55 S. W. 1133, 77 Am. St. 873, under a constitutional provision that the homestead in a city shall consist of a lot or lots not exceeding $5,000 in value, provided the same are used as a home, it was held that a lot used for raising garden vegetables and fruit for the exclusive use of the family was a part of the homestead, although located in a different part of the city from the owner's residence lot. After stating that a garden is a home use, the court said:

"Then, if a garden is a home use,—one that would protect it if adjoining the residence lot, as held in the *Medlenka* case, —we can see no reason why the same use will not protect it though situated across the street, as in the *Jacob-Hawkins* case, or across ten streets, or anywhere else in the town, city, or village. It might not be as convenient a homestead, thus scattered from suburb to suburb, but probably the best the poor drummer would be able to own. He might not be able

to own the lot adjoining his residence to use for a garden, because of its great value for building purposes, but could buy one in the suburbs of the town, larger and perhaps better adapted for a garden, and thus add a few comforts to his home."

Bearing in mind differing statutes and constitutional provisions, the following cases support our views: *Campbell v. Macmanus*, 32 Tex. 442; *Lacour v. Levy & Co.* (Tex. Civ. App.), 108 S. W. 190; *Jacobs v. Hawkins*, 63 Tex. 1; *Axer v. Bassett*, 63 Tex. 545; *Thebo v. Cain*, Fed. Case, No. 13,875; *Moses v. Groner*, 106 Tenn. 121, 60 S. W. 497; *Gibbs v. Adams*, 76 Ark. 575, 89 S. W. 1008. The cases in which a contrary rule is asserted are absolutely barren of the spirit of the law.

The judgment of the lower court is affirmed.

RUDKIN, C. J., FULLERTON, GOSE, and MORRIS, JJ., concur.