[No. 8609-3-II.   Division Two.   July 9, 1987.]

PINEBROOK HOMEOWNERS ASSOCIATION, *Respondent,* v.
MARILYN I. OWEN, ET AL, *Appellants.*

*Gregory L. Bass* and *Joyce C. Brekke* of *Evergreen Legal Services,* for appellants.

*Barbara A. Peterson* and *Williams, Kastner & Gibbs,* for respondent.

PETRICH, J.—Marilyn Owen appeals a judgment and decree of foreclosure which incorporates prior partial summary judgments. The judgment allows for the sale of Owen's home to satisfy the lien of Pinebrook Homeowners Association, for past due assessments for exterior maintenance work performed on her home.

Owen presents two issues for appeal: (1) whether the maintenance assessment lien of a homeowners association can be executed against property to which the debtor's homestead rights attach; and (2) whether the trial court abused its discretion in concluding that a stipulation executed by the parties, whereby Pinebrook would not seek the remedy of foreclosure upon Owen's homestead as a method of execution on any judgment, was only binding until the conclusion of trial.

We reverse, holding that property protected by the homestead exemption cannot be sold in satisfaction of a judgment foreclosing an assessment lien of a homeowners association because: the foreclosure and sale amount to an execution within the meaning of RCW 6.12.090; the lien does not qualify as one of the statutory homestead exceptions in RCW 6.12.100; and the lien does not qualify for the nonstatutory exception developed by case law.[1] Our resolution of the first issue makes it unnecessary to reach the second.

Pinebrook is a planned community development organized pursuant to a "Declaration of Covenants, Conditions,

---

[1] A homestead may be reached in satisfaction of debts by virtue of the excess value provisions of the statute, RCW 6.12.140–.280. However, Owen's equity was valued at less than the maximum protection.

and Restrictions," (the Covenants). The Covenants were recorded in the Clark County Auditor's Office in 1973. They authorized the creation of a homeowners association. One of the Association's functions was to perform regular exterior maintenance on the houses of each Pinebrook homeowner and Association member. The Covenants also established monthly assessments to pay for the maintenance charges. The Covenants specified that these monthly assessments would be "a charge on the land [of each Pinebrook homeowner] and . . . a continuing lien upon the property against which such assessment is made."

Several years later, in 1977, Owen purchased a home in the Pinebrook subdivision. At that time, she obtained a warranty deed from the previous owners which stated that it was subject to "easements, restrictions, conditions and *covenants of record*." (Italics ours.) Owen knew of the Covenants when she purchased her home.

In 1978 or 1979, Owen began to withhold payment of her monthly assessments, initially because she was dissatisfied with the upkeep of her home, subsequently because of a limited financial situation.

As a result of her nonpayment, Pinebrook filed in Clark County Superior Court a complaint to foreclose its lien for the unpaid assessments. Pinebrook moved for summary judgment. In its order for partial summary judgment, the court established the total amount of assessments due which is not contested by Owen. The judgment also decreed that the Covenants imposed an equitable lien on Owen's property which was superior to her homestead, and that the lien would be foreclosed to the extent it prevailed over her counterclaim for offset.

Trial was held on Owen's counterclaim. The court entered findings of fact and conclusions of law, and a judgment and decree of foreclosure. The final judgment and decree incorporated the partial summary judgments as well as a judgment with regard to Owen's offset.

The Washington State Constitution provides: "The legislature shall protect by law from forced sale a certain por-

tion of the homestead and other property of all heads of families." Const. art. 19, § 1. Pursuant to this section, the Legislature passed laws relating to homesteads, now codified in RCW 6.12.010 *et seq. Algona v. Sharp,* 30 Wn. App. 837, 839, 638 P.2d 627 (1982). The homestead statute implements the policy that each citizen have a home "where his family may be sheltered and live beyond the reach of financial misfortune." *Algona,* 30 Wn. App. at 841 (quoting *Clark v. Davis,* 37 Wn.2d 850, 852, 226 P.2d 904 (1951)). "Homestead and exemption statutes are favored in the law and should be liberally construed. 'They do not protect the rights of creditors. In fact, they are in derogation of such rights.'" (Citation omitted.) *Lien v. Hoffman,* 49 Wn.2d 642, 649, 306 P.2d 240 (1957).

Former RCW 6.12.090 provides that a homestead is exempt from attachment, and from execution or forced sale except as provided in RCW 6.12. Former RCW 6.12.100 lists the statutory exceptions to the homestead exemption. It provides:

6.12.100 Homestead subject to execution, when. The homestead is subject to execution or forced sale in satisfaction of judgments obtained:
(1) On debts secured by mechanic's, laborer's, materialmen's or vendor's liens upon the premises;
(2) On debts secured by purchase money security agreements describing as collateral a mobile home located on the premises or mortgages on the premises, executed and acknowledged by the husband and wife or by any unmarried claimant;
(3) On one spouse's or the community's debts existing at the time of that spouse's bankruptcy filing where (a) bankruptcy is filed by both spouses within a six–month period, including as a joint case under 11 U.S.C. Sec. 302, and (b) the other spouse exempts property from property of the estate under the federal exemption provisions of 11 U.S.C. Sec. 522(b)(1);
(4) On debts arising from a lawful court order or decree or administrative order establishing a child support obligation or obligation to pay spousal maintenance.

■ Interpretation of a statute is a matter of law. *Glacier*

*Springs Property Owners Ass'n v. Glacier Springs Enters.*, 41 Wn. App. 829, 832, 706 P.2d 652, *review denied*, 105 Wn.2d 1002 (1985).

> The function of the court in statutory interpretation is to discover the intent of the Legislature and give effect to that intent. If a statute is unambiguous, the meaning of the statute must be derived from the actual language of the statute. If a statute is amenable to more than one interpretation, the court should adopt the interpretation most consistent with the Legislature's intent. The intent of the Legislature must be derived from the language of the act as a whole, together with the constructions placed on the statute by this court.

(Citations omitted.) *Stewart Carpet Serv., Inc. v. Contractors Bonding & Ins. Co.*, 105 Wn.2d 353, 358, 715 P.2d 115 (1986).

"In construing the language in a statute, words are to be given their plain and ordinary meaning unless a contrary intent appears." *Hewson Constr., Inc. v. Reintree Corp.*, 101 Wn.2d 819, 826, 685 P.2d 1062 (1984).

The only statutory exceptions which could conceivably include Pinebrook's lien are those listed in RCW 6.12-.100(1) for "debts secured by mechanic's, laborer's, materialmen's or vendor's liens upon the premises", and that listed in former RCW 6.12.100(2) for "mortgages on the premises".

■ Mechanics', laborer's, and materialmen's liens are creatures of statute in derogation of the common law; thus, their terms must be strictly construed so as not to extend their benefits to those who do not clearly come within their terms. *Wells v. Scott*, 75 Wn.2d 922, 925, 454 P.2d 378 (1969); *Irwin Concrete, Inc. v. Sun Coast Properties, Inc.*, 33 Wn. App. 190, 653 P.2d 1331 (1982); *Dean v. McFarland*, 81 Wn.2d 215, 500 P.2d 1244, 74 A.L.R.3d 378 (1972).

■ Here, the record fails to show that Pinebrook's lien falls within any of the various lien statutes. There is nothing to indicate that the required notices or claims of lien were given or filed as required by RCW 60.04. Its lien cannot be construed as a mechanics', a laborer's, or a material-

men's lien for the purpose of the homestead statute, RCW 6.12.100(1).

Similarly, Pinebrook's assessment lien does not constitute a vendor's lien within RCW 6.12.100(1). In *In re Washburn*, 98 Wn.2d 311, 654 P.2d 700 (1982), the court stated that a judgment based on the purchase price of realty is in the nature of a vendor's lien within the meaning of RCW 6.12.100(1). Here, Pinebrook's judgment for past due maintenance assessments was not a judgment based on the purchase price of Owen's home; thus, the resulting lien cannot be a vendor's lien within RCW 6.12.100(1).

Pinebrook's lien also does not constitute a mortgage on the premises. As described above, Owen agreed to subject her home to Pinebrook's lien when she purchased her home and accepted the deed subject to "covenants of record." We concede that Owen's knowing acceptance of the deed may have been sufficient to create an "equitable mortgage" between herself and Pinebrook. *See Pacific Nat'l Bank v. Richmond*, 12 Wn. App. 592, 530 P.2d 718, *review denied*, 85 Wn.2d 1011 (1975). However, we find that such a "mortgage" cannot constitute a "mortgage" for the purpose of RCW 6.12.100(2), since Owen never "executed and acknowledged" a deed to mortgage her home to Pinebrook as required by the statute's express terms. Our result is consistent with the rule that the homestead laws are to be liberally construed in the debtor's favor.

In its brief, Pinebrook recognizes that there may be some difficulty in qualifying its lien within the scheme of the statutory exceptions of RCW 6.12.100. Nevertheless, it argues that its lien should escape homestead protection.

First, Pinebrook argues that its lien is prior to Owen's homestead because: the lien arose when the covenants were filed in 1973, and Owen did not obtain homestead protection until after she purchased her home in 1977; and the lien is of an equitable nature, beyond the protection of the homestead exemption. Our response is twofold. First, a "homestead is neither a lien nor an encumbrance, but a species of land tenure exempt from execution and forced

sale in all but the enumerated circumstances. RCW 6.12-.080, .090. An assessment lien cannot, therefore, be 'superior' to homestead." *Algona v. Sharp,* 30 Wn. App. 837, 843, 638 P.2d 627 (1982). Second, although Washington does have a nonstatutory exemption to homestead protection for certain equitable liens, Pinebrook's lien does not fall within its parameters. The nonstatutory exception allows an equitable lien to be imposed against a homestead when the homestead claimant acquires the funds to purchase the homestead by fraud or theft. *Webster v. Rodrick,* 64 Wn.2d 814, 818–19, 394 P.2d 689 (1964). *See also Christensen v. Christgard, Inc.,* 35 Wn. App. 626, 668 P.2d 1301 (1983). Here, there has been no assertion that Owen attempted to use her homestead for a fraudulent purpose.

Next, Pinebrook argues that its foreclosure action is not a "forced sale" or "execution" because the lien and implied right of foreclosure were consensual, since Owen voluntarily moved into Pinebrook and agreed to subject her home to Pinebrook's continuing lien for unpaid assessments. Pinebrook bases its arguments on *Felton v. Citizens Fed. Sav. & Loan Ass'n,* 101 Wn.2d 416, 679 P.2d 928 (1984). In *Felton,* the Washington Supreme Court found that a nonjudicial trustee sale is not a forced sale from which a homestead is exempt. *Felton,* 101 Wn.2d at 423. The court found that the consensual nature of a trustee's sale prevented it from being subject to the homestead "forced sale" exemption.

Although not necessary to its holding, the *Felton* opinion suggests that a decree foreclosing a mortgage and directing the sale does not amount to a "forced sale" within the meaning of the homestead exemption statute because the mortgagor–debtor has indirectly consented to the acts that usually eventuate in a sale. *Felton,* 101 Wn.2d at 421–23. Pinebrook relying on these statements argues that Owen's voluntary acceptance of the restrictive covenants eliminates from these proceedings any vestige of a "forced sale."

We need not decide whether the foreclosure of a homeowners association's assessment lien, agreed to and assumed by the landowner, qualifies as a forced sale. For

even if the foreclosure sale does not amount to a "forced sale," Pinebrook must demonstrate that it does not amount to an execution to avoid the homestead exemption. RCW 6.12.090; *Felton,* 101 Wn.2d at 420–21.

"Execution" has been defined as follows:

"Execution" is simply the mode of obtaining the debt recovered by judgment. 1 Bouvier's Law Dictionary (Rawle's 3rd Rev.) 1112. It is a writ by which the judgment of the court is enforced. *Mayer v. Morgan,* 26 Wash. 71, 66 Pac. 128 [(1901)].

*First Nat'l Bank v. Tiffany,* 40 Wn.2d 193, 196, 242 P.2d 169 (1952).

Characterizing the proceedings below as a lien foreclosure rather than an execution of the personal debt of Owen, Pinebrook, without citation of authority, contends there is no execution contemplated within the meaning of RCW 6.12.100. We disagree.

The judgment and decree here, after fixing the amount of the judgment, ordered that in the event of its nonpayment the lien be foreclosed and the property sold by the sheriff. The judgment and decree also specified that the shorter period of redemption would apply as allowed by RCW 6.24.140, and declared all other claims and interests (other than that of the beneficiary of a deed of trust) be inferior to Pinebrook's interest and forever extinguished excepting only the statutory right of redemption allowed such inferior claimants. Clearly this judgment and decree amounts to a means of enforcing the court's judgment and qualifies as an execution within the meaning of RCW 61.12.090. The homestead is thus exempt from such proceedings.

Finally, Pinebrook argues that because homeowner associations and condominium associations are "essentially identical," Pinebrook's lien should be treated the same as a condominium lien. Pinebrook goes on to argue that condominium liens fall within the homestead exception for "mortgages" under RCW 6.12.100(2) because the Horizontal Property Regimes Act, RCW 64.32.200(2), provides that condominium liens may be foreclosed "in like manner as a

mortgage of real property." We note that this statute does not say that a condominium lien is a mortgage. Thus, we cannot find that the Legislature intended to equate these liens with mortgages for the purpose of the homestead exception in RCW 6.12.100(2). Rather, the Legislature merely intended that these liens be foreclosed under procedures similar to a mortgage. *See* RCW 61.12. Thus, a condominium lien cannot escape the protection of the homestead statute. Even if we accept Pinebrook's contention that its lien should be treated as that of a condominium assessment for common areas, we cannot find that Pinebrook is entitled to relief from the homestead statute.

That portion of the judgment foreclosing the lien and ordering the sale of Owen's property in satisfaction thereof is reversed.

ALEXANDER, A.C.J., and WORSWICK, J., concur.

Review denied by Supreme Court November 3, 1987.