IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| NORMAN and REBECCA FLINT, and the marital community comprised thereof, | ) ) ) | No. 77241-4-I |
| Respondents, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| ALLSTATE INSURANCE COMPANY, a foreign corporation, | ) ) ) | |
| Appellant, | ) ) | |
| DONNA MURPHY, a single person; INTERNAL REVENUE SERVICE OF THE UNITED STATES OF AMERICA; a governmental entity; EVERETT ASSOCIATION OF CREDIT MEN, INC. a Washington corporation; and JOHN DOES 1-10, | ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Defendants. | ) | FILED: March 4, 2019 |

SCHINDLER, J. — Rebecca and Norman Flint (collectively, Flint) filed a quiet title action against Donna Murphy and Allstate Indemnity Company. Flint claimed title by adverse possession of the property owned by Murphy. The court ruled Allstate did not have standing in the quiet title action. Because the record establishes Allstate has a substantial interest in the outcome of the litigation, we reverse the decision that Allstate did not have standing, vacate the order quieting title to the property in Flint, and remand.

<u>Murphy Property</u>

In 2002, Donna Murphy purchased a house and property on Orcas Island. In 2003, Murphy conveyed a portion of the property by statutory warranty deed to Rebecca and Norman Flint (collectively, Flint). Murphy retained 1.07 acres located at 26 Matia View Drive, Eastsound, Washington (Murphy Property). The adjacent Flint property is located at 37 Cockerill Lane.

In March 2005, Murphy obtained a loan from New Century Mortgage Corporation for $302,900. As a condition of the loan, Murphy obtained property and mortgage insurance from Allstate Indemnity Company. The insurance contract named Murphy and New Century Mortgage as beneficiaries. Murphy executed a promissory note for $302,900 and a deed of trust on the property to secure the promissory note. The deed of trust identifies New Century Mortgage as the beneficiary and names a trustee.

Murphy paid only the first monthly installment on the promissory note. On November 8, the trustee recorded a trustee's foreclosure sale of the deed of trust for February 3, 2006.

A fire caused extensive damage to Murphy's house on the date scheduled for the foreclosure sale, February 3, 2006. New Century Mortgage submitted a claim to Allstate under the policy for $175,444. Murphy submitted an insurance claim to Allstate with a "sworn proof of loss and inventory." Murphy claimed "$908,000 in property damage and lost personal property." Allstate "issued advances" to Murphy for living expenses and "other cash advances to assist [her] following [her] loss."

Allstate conducted an investigation of Murphy's insurance policy claim. The Allstate inspector "concluded that the cause was an intentionally set fire." Police and

fire department reports also noted the "absence of personal property in the residence." Allstate denied Murphy's claim on the grounds of misrepresentation and evidence that the fire was intentionally set.

Murphy v. Allstate

On February 1, 2007, Murphy filed a lawsuit against Allstate for breach of the insurance agreement, Murphy v. Allstate Indemnity Company, cause 07-2-05019-2. On January 4, 2008, the court granted Allstate's motion for summary judgment dismissal. The court concluded Murphy's contractual claims "are precluded from coverage under the policy of insurance due to Plaintiff's misrepresentations" or, alternatively, because "the fire at Plaintiff's residence was intentionally set."

Settlement Agreement with Carrington Mortgage

Carrington Mortgage Services LLC purchased the assets of New Century Mortgage. On May 21, 2007, Carrington Mortgage and New Century Mortgage entered into an "Amended and Restated Asset Purchase Agreement" for "Servicing Rights and rights to receive Servicing Fees with respect to the New Century Portfolio-Related Assets."

In May 2008, Carrington Mortgage and Allstate entered into a settlement agreement. The settlement agreement assigned the New Century Mortgage claim of $175,444 for loss from the fire of the Murphy house to Allstate. On June 24, 2008, Allstate recorded the "Release and Settlement Agreement" in the San Juan County records.

Reconveyance of Deed of Trust to Murphy

On August 5, 2013, the trustee recorded a notice of trustee's sale for the deed of trust on the Murphy Property. The foreclosure sale was scheduled for December 6. On April 11, 2014, the trustee recorded a notice of discontinuance of the trustee's sale. On January 27, 2016, the mortgage holder reconveyed the deed of trust to Murphy.

Flint Action to Quiet Title

On May 27, 2016, Flint filed a quiet title action against Murphy and Allstate in superior court.[1] Flint alleged "actual, open, adverse, notorious and uninterrupted possession" of the Murphy Property for more than 10 years. Flint sought an order quieting title "in fee simple" and barring Murphy and Allstate from "asserting any right, title, estate, lien or interest in the Murphy Property."

On the same date, May 27, 2016, Flint recorded a lis pendens against the Murphy Property under RCW 4.28.320.

> The purpose of [filing] a lis pendens is to give notice of pending litigation affecting the title to real property, and to give notice that anyone who subsequently deals with the affected property will be bound by the outcome of the action to the same extent as if he or she were a party to the action.

United Sav. & Loan Bank v. Pallis, 107 Wn. App. 398, 405, 27 P.3d 629 (2001).

Murphy did not file an answer in the quiet title action.[2] Allstate filed an answer and counterclaims. Allstate denied adverse possession. Allstate asserted the superior court entered an order of summary judgment dismissal on the breach of contract claims in Murphy v. Allstate and "[a]s a result of the agreement between Allstate and

---

[1] Flint also named the Internal Revenue Service (IRS) and Everett Association of Credit Men Inc. as defendants in the quiet title action. The IRS filed a notice of appearance with a "disclaimer of interest in the subject real property." Flint voluntarily dismissed the claims against the IRS.

[2] Everett Association of Credit Men did not file an answer in the quiet title action.

Carrington Mortgage Services," Allstate had a recorded priority security interest in the Murphy Property. Allstate filed counterclaims for declaratory judgment.

Flint filed a CR 41(a) motion to voluntarily dismiss Allstate. The court entered an order dismissing the claims against Allstate and Allstate's counterclaims without prejudice.

On July 14, Allstate filed a motion to intervene in the quiet title action as a matter of right under CR 24. Allstate argued the motion was timely, the record established Allstate had a significant economic interest in the property subject to the quiet title action, and its interest would not be represented or protected by Murphy.

In opposition, Flint argued Allstate had "no legally recognizable interest in the Property," did not have "an enforceable security interest," and could not enforce the deed of trust.

The court granted Allstate's motion to intervene. The court entered an order of default in the quiet title action against Murphy.[3]

Final Judgment in Murphy v. Allstate

On August 19, 2016, the court granted Allstate's motion for final judgment in Murphy v. Allstate. The court ruled Allstate is entitled to "the amount claimed by Allstate" of $175,444.00 with prejudgment interest. The August 19 "Final Judgment" awarded Allstate $175,444.00 with prejudgment interest of $179,970.05 and statutory costs. The court entered a Final Judgment against Murphy in the amount of $359,365.64.

---

[3] The order of default is also against Everett Association of Credit Men.

Allstate Motion for Summary Judgment Dismissal of Quiet Title Action

On January 13, 2017, Allstate filed a motion for summary judgment dismissal of the quiet title action. Allstate argued Flint could not establish adverse possession.

In response, Flint argued Allstate "does not have standing to challenge" the adverse possession claim because as a matter of law Allstate has no interest in the Murphy Property. Flint asserted the Final Judgment in Murphy v. Allstate does not create "any right or interest in the real property subject to the lien."

Allstate argued it had "standing and the legal right to appear and be heard in order to protect its interest." Allstate asserted the Final Judgment entered in Murphy v. Allstate was recorded and established a substantial interest in the outcome of the quiet title action.

The court issued a letter decision on March 17. The court states Allstate "has a judgment lien against the property, resulting from the August [19], 2016 entry of a Final Judgment in Murphy v. Allstate, San Juan County Cause No. 07-2-05019-2." The court cites the Washington Supreme Court decision in Federal Intermediate Credit Bank of Spokane v. O/S Sablefish, 111 Wn.2d 219, 226, 758 P.2d 494 (1988) (quoting Mahalko v. Arctic Trading Co., 99 Wn.2d 30, 35, 659 P.2d 502 (1983)), to conclude Allstate "does not have standing" to defend against the adverse possession claim because a " 'judgment lien does not create any right of property or interest in the lands upon which it is a lien.' "

The court entered an order denying Allstate's motion for summary judgment because Allstate "does not have standing to challenge the Flint[ ] adverse possession claim."

Flint Motion for Summary Judgment on Adverse Possession

The Flints filed a summary judgment motion to quiet title in the Murphy Property. The court granted the motion for summary judgment and entered an order quieting title to the Murphy Property in Flint. The order states all parties are "barred" from asserting any interest in the property before Flint recorded the lis pendens on May 27, 2016.

Standing in the Quiet Title Action

Allstate contends the court erred in ruling it did not have standing in the quiet title action.

Standing is a question of law we review de novo. In re Estate of Becker, 177 Wn.2d 242, 246, 298 P.3d 720 (2013); Knight v. City of Yelm, 173 Wn.2d 325, 336, 267 P.3d 973 (2011). To establish standing, a party must have "a specific personal interest in the controversy" and a distinct interest in the outcome of the case. E. Gig Harbor Improvement Ass'n v. Pierce County, 106 Wn.2d 707, 710, 724 P.2d 1009 (1986); Timberlane Homeowners Ass'n, Inc. v. Brame, 79 Wn. App. 303, 307, 901 P.2d 1074 (1995). A party must show "a real interest in the subject matter of the lawsuit, that is, a present, substantial interest, as distinguished from a mere expectancy, or future, contingent interest, and the party must show that a benefit will accrue it by the relief granted." In re Petition to Declare County Rd., 63 Wn. App. 900, 907, 823 P.2d 1116 (1992).

Flint relies on Sablefish to argue Allstate did not have standing in the quiet title action. The decision in Sablefish does not address standing. In Sablefish, the Washington Supreme Court addressed whether a judgment creditor must record a lien on property. Sablefish, 111 Wn.2d at 220.

7

The court in Sablefish rejected the argument that a money judgment lien is a conveyance that must be recorded to be effective against a subsequent purchaser. Sablefish, 111 Wn.2d at 225-27. The court concluded the statutory definition of "conveyance" does not include a money judgment:

> "A judgment lien does not create any right of property or interest in the lands upon which it is a lien. It gives the right to foreclosure, either by execution or independent suit, which, when done, will relate back so as to exclude adverse interests subsequent to the fixing of the lien."

Sablefish, 111 Wn.2d at 226 (quoting Mahalko, 99 Wn.2d at 35). The court held that because a judgment lien "arises automatically upon entry of judgment as to all real estate of the judgment debtor" in the county where the judgment is entered, a judgment creditor need not separately record the judgment "for the lien to be effective against purchases of the property to which a lien is attached." Sablefish, 111 Wn.2d at 222-23; see also Hu Hyun Kim v. Lee, 145 Wn.2d 79, 86, 31 P.3d 665, 43 P.3d 1222 (2001) ("Judgment attaches automatically as a lien upon the real estate of the judgment debtor.").

The lien against Murphy for $359,365.64 does not create a property right or interest. But the recorded judgment in the amount of $359,365.64 establishes a substantial interest in the outcome of the quiet title action. See RCW 4.56.200(2). " '[A] title acquired by adverse possession is a title in fee simple, and is as perfect a title as one by deed from the original owner.' " Thornely v. Andrews, 40 Wash. 580, 584-85, 82 P. 899 (1905) (quoting 1 Cyc. 1135B); N. Pac. Ry. Co. v. Ely, 25 Wn. 384, 387-88, 65 P. 555 (1901).

8

Because Allstate has a substantial interest in the outcome of the quiet title action, we reverse the decision that Allstate did not have standing, vacate the order quieting title in Flint, and remand.

WE CONCUR: